UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

LONGHORN DIRECTORIES, LLC,        §
                                  §
    Plaintiff,                    §
                                  §
v.                                §        CIVIL ACTION NO. 3:12-CV-1088-B
                                  §
VOLT INFORMATION SCIENCES, INC.,  §
DATANATIONAL, INC., YPG           §
DIRECTORIES, LLC, and ZIPLOCAL, LP, §
                                  §
    Defendants.                   §


## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Volt Information Sciences, Inc.'s ("Volt") and DataNational, Inc.'s ("DataNational") (collectively "Volt Defendants ") Motion to Stay Proceedings and Compel Arbitration (doc. 8) filed on April 24, 2012. Also before the Court are Defendants Ziplocal, LP's ("Ziplocal") and YPG Directories, LLC's ("YPG") (collectively "YPG Defendants") Motions to Dismiss or in the Alternative, to Compel Arbitration (docs. 26, 27) filed on June 8, 2012 and June 18, 2012 respectively. For the following reasons, the Volt Defendants' Motion to Stay Proceedings and Compel Arbitration (doc. 8) is GRANTED, and the YPG Defendants' Motions to Dismiss or, in the Alternative, to Compel Arbitration (docs. 26, 27) are DENIED in part and GRANTED in part.

1

# I.

# BACKGROUND

This case arises out of alleged obligations due pursuant to the assets sale of a telephone directory and its subsequent conveyances. On or about November 30, 2006, Longhorn Directories, LLC ("Longhorn" or "Plaintiff"), an independent telephone directory advertising company, sold certain telephone directory assets to DataNational, Inc. Pl.'s Sec. Am. Compl. ¶ 2.0. The transaction was memorialized in a Telephone Directory Asset Purchase Agreement (the "Agreement"). Defs.' Not. of Rem. Ex. D 7. According to Section 2.4(b) of the Agreement, DataNational was to be paid annually "one dollar for each dollar of sales increase over the final sales" for four years following the sale. *Id.* at 10. Further, Section 2.5 provides that "[a]ny dispute between the Parties concerning [annual payments] shall be resolved as provided in Section 11.4 of this Agreement." *Id.* at 11. Section 11.4 of the Agreement states in relevant part :

> Any unresolved dispute between the Parties shall be resolved by arbitration in accordance with the rules of the American Arbitration Association in New York State, New York County. All Parties consent to the jurisdiction of the Supreme Court of the State of New York, County of New York, and of the United States District Court for the Southern District of New York, for all purposes in connection with any arbitration arising out of this Agreement except that DataNational may bring an action for injunctive relief or specific performance in any of said courts.

*Id.* at 23.

After acquiring the assets pursuant to the Agreement, DataNational sold the assets to YPG, who subsequently sold the assets to ZipLocal. Pl.'s Sec. Am. Compl. ¶ 2.1. Longhorn contends that DataNational, YPG, and Ziplocal have failed to provide Longhorn with annual accountings and payments due under the Agreement.

2

On January 10, 2012, Longhorn filed its Original Petition in the 413th District Court of Johnson County, Texas against DataNational and its parent company. Defs.' Not. of Rem. ¶ 4. The complaint sought damages for fraud and breach of contract, and declaratory relief that the Volt Defendants have not performed as required under the Agreement. *Id.* at Ex. D 4–5. The Volt Defendants subsequently removed proceedings to this Court under diversity jurisdiction and filed the present Motion to Stay Proceedings and Compel Arbitration (doc. 8).

Plaintiff was granted leave to amend and filed its First Amended Complaint (doc.10) on April 25, 2012, adding YPG and Ziplocal as defendants. Shortly thereafter, Plaintiff was granted leave to correct a typographical error and filed its Second Amended Complaint (doc. 17) on April 30, 2012.[1] Subsequently, YPG and Ziplocal each individually filed the instant Motions to Dismiss or, in the Alternative, to Compel Arbitration (docs. 26, 27). On July 12, 2012, Plaintiff filed a response agreeing to arbitration under the terms of the Agreement or, in the alternative, seeking leave to amend its complaint. The Motions being fully briefed and ripe for consideration, the Court turns to its analysis.

## II.

## ANALYSIS

The Volt Defendants seek to stay proceedings and compel arbitration pursuant to the terms of the Agreement. Although Longhorn initially opposed arbitration pending its motion for leave to

---

[1] The Second Amended Complaint corrected a typographical error designating Ziplocal as a "Texas Corporation" when it was actually a "foreign limited partnership."

3

add additional defendants, Longhorn has since acquiesced to arbitration.[2] *See* Pl.'s Resp. to Defs.'
Mot. to Dismiss or, in the Alt., to Compel Arb. 1-2.

The YPG Defendants seek to dismiss Plaintiff's complaint for failure to state a claim or, in the
alternative, seek to compel arbitration and dismiss the proceedings. As mentioned above, Longhorn
is not opposed to arbitration. Longhorn has also incorporated in its response a Motion for Leave to
Amend Plaintiff's [Second Amended] Complaint, in the event that the Court does not compel
arbitration. *See id.*

With Longhorn's, the Volt Defendants' and the YPG Defendants' agreement to arbitrate, the
Court offers an abbreviated analysis of the issues.

A.  *The Volt Defendants' Motion to Compel Arbitration/Stay Proceedings*

The Federal Arbitration Act ("FAA") "is a congressional declaration of a liberal policy
favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1,
24 (1983). Under the FAA, a court, upon motion of a party, must stay judicial proceedings when
there is a valid arbitration agreement governing the dispute. 9 U.S.C. § 3. When considering a
motion to compel arbitration, the court must perform a two-step inquiry. *Dealer Computer Servs., Inc.
v. Old Colony Motors, Inc.*, 588 F.3d 884, 886 (5th Cir. 2009). First the court must "determine
whether the parties agreed to arbitrate the dispute in question" by considering: "(1) whether there
is a valid agreement to arbitrate between the parties, and (2) whether the dispute in question falls
within the scope of that arbitration agreement." *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir.

---

[2] In its response to the YPG Defendants' Motions to Dismiss or in the Alternative, to Compel Arbitration
(docs. 26, 27), Plaintiff stated it was "not opposed" to arbitration. *See* doc.30 at 1.

2006) (quoting *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)) (internal quotations omitted). This analysis requires that a court apply "ordinary state-law principles that govern the formation of contracts." *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Second, once the court finds a valid arbitration agreement, the Court must then determine whether "any federal statute or policy renders the claims nonarbitrable." *Sherer v. Green Tree Servicing*, 548 F.3d 379, 381 (5th Cir. 2008). Where there is an "absence of a contrary federal statute, arbitration should be compelled in accordance with the FAA." *Glazer's, Inc. v. Mark Anthony Brands Inc.*, No. SA-11-CV-977-XR, 2012 WL 2376899, at *3 (W.D. Tex. June 22, 2012).

Here, were the issue in dispute, the Court would find in favor of compelling arbitration as to the Volt Defendants. Applying ordinary state-law contractual principles, the Court finds that Longhorn and the Volt Defendants are bound by the terms of the arbitration provision. It is undisputed that both Longhorn and the Volt Defendants are signatories to the Agreement. As signatories to an agreement, they have indicated their consent to perform under the contractual terms. *See, e.g.*, *Willis v. Donnelly*, 199 S.W.3d 262, 271 (Tex. 2006) (because business owner did not sign contract, he was not contractually bound to his company's contract). Further, neither party challenges the validity of the Agreement; indeed, both parties now seek to enforce the arbitration provision contained in the Agreement. As such, the Court finds the arbitration agreement applicable to both Longhorn and the Volt Defendants.

As to whether Longhorn's claims fall within the scope of the arbitration agreement, Section 2.5 of the Agreement expressly provides that "[a]ny dispute between the Parties concerning the

amount of any adjustment to be made to any Subsequent Payment under Section 2.4(b) . . . , which the Parties in good faith cannot resolve, shall be resolved as provided in Section 11.4 [the arbitration provision] of this Agreement." Defs.' Not. of Rem. Ex. D at 11. All of Longhorn's claims, namely its fraud, breach of contract, and declaratory relief claims, arise from payments allegedly owed to them under Section 2.4(b). Moreover, the broad, catch-all language of the Agreement's arbitration clause, which provides that "[a]ny unresolved dispute between the Parties shall be resolved by arbitration," encompasses all disputed claims raised by Longhorn.  Defs.' Not. of Rem. Ex. D at 23.

In sum, were the issue in dispute, the facts support a finding that all of Longhorn's claims against the Volt Defendants fall within the scope of a valid arbitrable agreement. For those reasons and, given the parties' agreement, the Volt Defendants' Motion to Compel Arbitration is GRANTED. The Volt Defendants' request to stay proceedings is addressed separately below.

B. The YPG Defendants' Motions to Dismiss or, in the Alternative, to Compel Arbitration

With regard to the YPG Defendants' Motions to Dismiss or, in the Alternative, to Compel Arbitration, because of the parties' agreement to arbitrate, the Court declines to address that portion of the Motion regarding the adequacy of Plaintiff's pleadings.  The YPG Defendants' challenge to the pleadings will accordingly be denied without prejudice pending completion of the arbitration proceedings.

As to the YPG Defendants' alternative remedy seeking arbitration, again the parties agreement to arbitrate renders a lengthy analysis of this issue unnecessary. Nonetheless, as previously mentioned,  Longhorn's claims fall squarely under the scope of an arbitrable agreement. *See supra* II.A. Further, although the YPG Defendants are not signatories to the Agreement or its

corresponding arbitration provisions, "federal courts have held that so long as there is some written agreement to arbitrate, a third party may be bound to submit to arbitration." *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 355 (5th Cir. 2003).[3] For these reasons, the Court GRANTS the YPG Defendants' alternative motion to compel arbitration.

### C. Stay or Dismiss Proceedings

Finding arbitration appropriate in this case, the Court next considers whether to stay or dismiss proceedings pending the outcome of arbitration. The FAA provides that "upon any issue referable to arbitration under an agreement," the court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Dismissal, however, is permissible when "[t]he weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). The district court is given wide discretion whether to stay proceedings or dismiss a case. *Apache Bohai Corp. v. Texaco China*, 330 F.3d 307, 311 n.9 (5th Cir. 2003); *Century Satellite, Inc. v. Echostar Satellite, L.L.C.*, 395 F. Supp. 2d 487, 494 (S.D. Tex. 2005).

While the Volt Defendants request a stay of proceedings, the YPG Defendants, in their alternative motion to compel, seek to dismiss Longhorn's claim in lieu of a stay. Longhorn has not weighed-in in either respect. The YPG Defendants contend, with no factual support, that there is "no need for the Court to retain jurisdiction." Defs.' Mots. to Dismiss or, in the Alt., to Compel Arb.

---

[3] "Six theories for binding a nonsignatory to an arbitration agreement have been recognized: (a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing/alter ego; (e) estoppel; and (f) third-party beneficiary." *Bridas*, 345 F.3d at 355.

8 (citing *Alford*, 975 F.2d at 1164). The *Alford* case allowed for a dismissal of the case based on a finding that the "proper circumstances" existed; that being that "all of the issues raised in the district court must be submitted to arbitration."*Alford*, 975 F.2d at 1164. Here, given the relatively early stage of this case, it is unclear, whether all of the potential claims have been explored.  Further, because the YPG Defendants offer only conclusory allegations that this case involves the same "proper circumstances" for dismissal as did *Alford*, the Court opts to stay the case.

### III.

### CONCLUSION

Based on the foregoing, the Volt Defendants' Motion to Stay Proceedings and Compel Arbitration (doc. 8) is GRANTED, and the YPG Defendants' Motions to Dismiss or, in the Alternative, to Compel Arbitration are DENIED to the extent the YPG Defendants seek a dismissal of this case and GRANTED to the extent they seek to compel arbitration. The parties are ORDERED, pursuant to Section 11.4 of the Agreement, to arbitrate all claims in New York State, New York County. The parties are further ORDERED to submit, in 90-day intervals after the date of entry of this Order, a joint status report advising the Court on the progress of Arbitration.

SO ORDERED.

SIGNED August 7 , 2012

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

8